# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7024 | **DATE** | 10/31/2003 |
| **CASE TITLE** | Lisle Corporation vs. A.J. Manufacturing Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motions for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    For the reasons given in the attached memorandum opinion: Defendant A.J.'s Motion for Reconsideration [Doc. #36] is denied but the Court, *sua sponte*, reconsidered the challenged portion of the claim construction due to a manifest error of fact; Defendant's Motion for Summary Judgment of non-infringement and invalidity [Docs. # 40, 64] is denied; Defendant's Motion to Strike [Doc. #62] is denied; and Plaintiff's Motion for Summary Judgment of infringement [Doc. #44] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | NOV 03 2003 | date docketed | | 81 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| jar(lc) | courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LISLE CORPORATION, an Iowa corporation

    Plaintiff,

v.

A.J. MANUFACTURING COMPANY, an Illinois Corporation

    Defendant.

)
)
)
)
)
)
)
)
)
)
)

**DOCKETED**

NOV 0 3 2003

No. 02 C 7024

HONORABLE DAVID H. COAR

## MEMORANDUM OPINION AND ORDER

Lisle Corporation ("Lisle") filed suit against A.J. Manufacturing Company ("A.J.") alleging that it infringed U.S. Patent No. 5,287,776 (the "'776 patent") by manufacturing and selling a specialized automotive inner tie rod tool. On June 19, 2003, this Court issued its construction of the claim in the '776 patent. Since that ruling, several motions have been filed. Defendant A.J. has filed a Motion for Reconsideration of the claim construction ruling, each of the parties has filed a motion for summary judgment, and Defendant A.J. has filed a Motion to Strike. The Court will address all of those motions here, beginning with the Motion for Reconsideration.

## I. A.J.'s Motion for Reconsideration

"To prevail on a motion for reconsideration under Rule 59, the movant must present . . . newly discovered evidence or establish a manifest error of law or fact." Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (citing LB Credit Corp. v. Resolution Trust Corp., 49

1



F.3d 1263, 1267 (7th Cir. 1995)).  A manifest error of law occurs when a court disregards, misapplies, or fails to recognize controlling precedent.  Id.

A.J.'s motion for reconsideration urges that the Court made a manifest error of law in its claim construction by failing to consider whether its construction of the '776 patent claims rendered the patent indefinite under 35 U.S.C. § 112, ¶2.  Section 112, paragraph 2 requires patent claims to "particularly point[] out and distinctly claim[] subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2.  If the claims fail to "particularly point out and distinctly claim" the subject matter of the invention, then the patent would fail for indefiniteness. "'[D]etermination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.'" Exxon Research & Engineering Co. v. United States, 265 F.3d 1371, 1376 (Fed. Cir. 2001).  Consequently, claim indefiniteness is appropriate for disposition on a summary judgment motion.  See Id. (citing "multitude of recent authorities stating that indefiniteness is a question of law").

Whether it is appropriate to pursue indefiniteness on a motion for reconsideration following construction of a claim is another matter.  In the vast majority of cases, claim indefiniteness is decided in connection with a summary judgment motion.  See Intellectual Property Development, Inc. v. UA-Columbia Cablevision of Westchester, Inc., 336 F.3d 1308, 1318 (Fed. Cir. 2003) (noting the district court decided the indefiniteness question on summary judgment); Omega Engineering, Inc. v. Raytek Corp., 334 F.3d 1314, 1320 (Fed. Cir. 2003) (same); Intel Corp. v. VIA Tech., Inc., 319 F.3d 1357, 1364 (Fed. Cir. 2003) (same); All Dental Prodx, LLC v. Advantage Dental Products, 309 F.3d 774, 777 (Fed. Cir. 2002) (same); S3 Inc. v. NVIDIA Corp., 259 F.3d 1564, 1565 (Fed. Cir. 2001) (same); DeMarini Sports, Inc. v. Worth,

Inc., 239 F.3d 1314, 1321 (Fed. Cir. 2001) (same). Patents benefit from a statutory presumption of validity that can only be overcome by clear and convincing evidence of invalidity. Intel Corp. v. VIA Tech., Inc., 319 F.3d 1357, 1366 (Fed. Cir. 2003). Where neither party has briefed the issue of indefiniteness in their claim construction submissions, there can be no manifest legal error in the claim construction for failing to invalidate the patent for indefiniteness *sua sponte*. This would disturb the statutory presumption of validity that can only be overcome on indefiniteness grounds by a showing of clear and convincing evidence.

Parties will occasionally assert a position on indefiniteness prior to a decision on claim construction. See Creo Products, Inc. v. Presstek, Inc., 305 F.3d 1337, 1346 (Fed. Cir. 2002) (discussing preservation of indefiniteness issue for appeal through invalidity argument presented "[i]n its briefing to the district court on claim construction"); Chiron Corp. v. Genentech, Inc., No. Civ.S-00-1252 WBSGGH, 2002 WL 32123928, at *2 (E.D. Cal. June 24, 2002) ("[the Defendant] initially raised the question of . . . indefinite[ness] in its opening claim construction brief"). To raise the issue after claim construction on a motion for reconsideration, however, is indeed rare. A.J.'s position with the motion for reconsideration is similar to a strategy the court dismissed in A.K. Stamping Co., Inc. v. Instrument Stamping Co., Inc., 106 F. Supp. 2d 627 (D. N.J. 2000). In A.K. Stamping, the defendant urged a new theory of patent invalidity on a motion for reconsideration of a preliminary injunction ruling. The court refused to consider the new argument and the evidence submitted therewith, holding that the defendant could not explain its failure to brief the issue in its initial submissions. A.K. Stamping Co., Inc., 106 F. Supp. 2d at 665–66. In A.K. Stamping, the evidence that the defendant sought to present on its motion for reconsideration could be used at later stages in the litigation. 106 F. Supp. 2d at 666 n.10 ("Of

course, [the defendant] may offer this evidence for consideration at the trial of this matter."). The same is true here. A.J.'s indefiniteness argument is an integral part of their summary judgment motion, and the Court will address it there.

For the reasons given above, A.J.'s Motion for Reconsideration on the basis of indefiniteness is denied. Although the Court finds no basis to reconsider its opinion based on indefiniteness, the Court, *sua sponte*, has detected a manifest error of fact in its claim construction of the disputed "detachably cooperative" term. In its opinion, the Court clearly held that the term "detachably cooperative" attempts to capture both the concept of detachability and the concept of cooperation. (A.J. Mot. Summ. J., Ex.H (Court's June 19, 2003 Markman order) at 13.) Immediately after that portion of the opinion, the Court explained how it was the rotation of the tube and retainer that is central to both detachment and cooperation. (Id. at 13–14.) The error arose in the final explanation of the concept of "detachably cooperative" where the Court held that "this phrase refers to the rotation of the retainer and the tabs." (Id. at 14.) The Court's claim construction strove to acknowledge that the retainer of the invention rotates in a "detachably cooperative" fashion in so far as rotation can result in detachment or in cooperation. It is rotation of the retainer that is detachably cooperative, not rotation of the retainer and the tabs. The phrase "detachably cooperative" does not refer to rotation of the tabs, it only refers to rotation of the retainer (which can result in rotation of the tabs depending on the direction of the rotation and the position of the tabs). The inclusion of the tabs with the rotation was in error, as they will only rotate when the retainer is "engaged therewith".

The Court will explain again here how its construction of the term "detachably cooperative" to refer to the rotation of the retainer resolved the apparent contradiction that arises

4

from a purely grammatical interpretation of "detachably cooperative." The detachability aspect of the term requires that the retainer (and tube) be detachable from the wrench disc and tie rod. The cooperation aspect of the term requires that the retainer (and tube) be able to cooperate with the wrench disc and tie rod. In order to utilize either the detachable aspect of the invention or the cooperative aspect of the invention, the tube and/or the affixed retainer must be rotated.[1] If the retainer is rotated one way, the retainer and tube will disengage from the wrench disc and the tie rod; when the tabs on the wrench disc are aligned with the slots on the end of the tube, the retainer and tube can detach from the wrench disc and tie rod. If the retainer is rotated the other way, the retainer and tube cooperate with the wrench disc to rotate the tie rod that is interlocked with the disc. This term "detachably cooperative" remains problematic from a grammatical standpoint, but the Court's construction of the term, as amended here, is consistent with the specification and the prosecution history of the '776 patent.

To clarify, then, the Court finds that it made a manifest error of fact in its claim construction of the phrase "Said retainer being detachably cooperative with the tabs to rotate the disc and a tie rod engaged therewith" in the '776 patent. The Court now amends its claim construction so that this phrase is construed to mean: Rotation of the retainer can result in separation or disengagement or it can result in rotation of the disc and a tie rod that is interlocked with the disc.

## II.     Motions for Summary Judgment

### A.       Summary Judgment Standard

---

[1] The Court again emphasizes that if the retainer is a permanent feature of the tube, rather than an additional piece as described in the preferred embodiment, rotation of the tube will automatically result in rotation of the retainer.

The Court applies the same summary judgment standard to patent cases as it does to other types of cases. See, e.g., Becton Dickinson & Co. v. C.R. Bard., Inc., 922 F.2d 792, 795-96 (Fed. Cir. 1990). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); see also Schmidt v. Ottawa Medical Center, P.C., 322 F.3d 461, 463 (7th Cir. 2003). On cross-motions for summary judgment, to determine whether there is a genuine issue of material fact, the Court views the evidence in the light most favorable to the non-moving party and makes all reasonable inferences in that party's favor. See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1307 (Fed. Cir. 1998); see also Met. Life Ins. Co. v. Johnson, 297 F.3d 558, 561-62 (7th Cir. 2002) (stating that Rule 56 summary judgment standard is the same for cross motions for summary judgment).

It is the moving party's burden to demonstrate the absence of genuine issues of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the moving party meets this burden, the non-moving party must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324. To successfully oppose the motion for summary judgment, the non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992). A mere scintilla of evidence in support of the non-movant's position is insufficient. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Both parties have moved for summary judgment in this case. Defendant A.J. seeks summary judgment on grounds of non-infringement and invalidity of the patent. Plaintiff Lisle seeks summary judgment of infringement. Additionally, Defendant A.J. has filed a motion to strike certain exhibits that Lisle submitted in support of its motion for summary judgment. The challenged exhibits relate to the issue of infringement, so the motion to strike will be addressed just before addressing infringement.

Since the patent's validity is challenged, the Court will begin its analysis with questions relating to invalidity. See Amgen Inc. v. Hoescht Marion Roussel, Inc., 314 F.3d 1313, 1342 (Fed. Cir. 2003) (noting that it is error to hold, in the alternative, that the patent is invalid and not infringed; invalidity precludes infringement). If the patent survives the invalidity challenges on summary judgment, the Court will go on to address the questions relating to infringement.

**B.     A.J.'s challenge based on the definiteness requirements of 35 U.S.C. § 112, ¶2**

A.J. asserts that the '776 patent is invalid because it is indefinite. Indefiniteness challenges originate from 35 U.S.C. § 112, ¶2, which requires patents to "particularly point[] out and distinctly claim[] subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. As mentioned above in the Court's discussion of the Motion for Reconsideration, the claims of a patent are afforded a statutory presumption of validity. See 35 U.S.C. § 282. "Overcoming the presumption of validity requires that any facts supporting a holding of invalidity be proved by clear and convincing evidence." Intellectual Property Development, Inc. v. UA-Columbia Cablevision of Westchester, Inc., 336 F.3d 1308, 1319 (Fed. Cir. 2003) (citing Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co., 204 F.3d 1360, 1367 (Fed. Cir. 2000)); see also Intel Corp. v. VIA Tech., Inc., 319 F.3d 1357, 1366 (Fed. Cir. 2003) ("Any fact critical to a

holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence.").

The definiteness requirement of §112, paragraph 2, requires the claims to inform the public adequately of the scope of the patent. The public in question, however, is not the public at large; rather, it is the particular public of those skilled in the art that is the subject matter of the patent. See W.L. Gore & Assoc., Inc. v. Garlock, Inc., 721 F.2d 1540, 1556 (Fed. Cir. 1983) ("Patents are written to enable those skilled in the art to practice the invention, not the [general] public."). Whether a claim is invalid for indefiniteness requires a determination of whether those skilled in the art would understand what is claimed when the claim is read in light of the specifications. Morton International, Inc. v. Cardinal Chem. Co., 5 F.3d 1464, 1470 (Fed. Cir.1993); Amgen, Inc. v. Chugai Pharm. Co., Ltd., 927 F.2d 1200, 1217 (Fed. Cir. 1991). The challenger must prove by clear and convincing evidence that those skilled in the art would not understand what is claimed. Intel Corp. v. VIA Tech., Inc., 319 F.3d 1357, 1366 (Fed. Cir. 2003) ("Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence.")

A.J.'s position that the '776 patent is indefinite focuses on the claim limitation "said retainer being detachably cooperative with the tabs to rotate the disc and a tie rod engaged therewith." This Court originally construed this portion of the claim to mean that "rotation of the retainer and tabs can result in separation or disengagement or it can result in rotation of the disc and a tie rod that is interlocked with the disc." (A.J. Mot. Summ. J., Ex. H (June 19, 2003 claim construction order), at 15). In this opinion, the Court admitted error in that construction and reconstrued the term to mean "rotation of the retainer can result in separation or disengagement

8

or it can result in rotation of the disc and a tie rod that is interlocked with the disc." Supra, at 5. The Court arrived at this construction with some difficulty, as a grammatical plain language analysis of the disputed phrase was somewhat confounding.

A.J.'s position is that those skilled in the art do not understand what is claimed by the '776 patent. A.J. asserted in its motion that it was basing "certain of its invalidity arguments on the actual or express language of the disputed limitation." (A.J. Mem. Law Supp. Motion Summ. J., at 8.) A.J. ignores that a finding of indefiniteness requires consultation of both the express language of the claim *and* the specification of the patent. As we will see, A.J.'s efforts to demonstrate indefiniteness neglect to consider the patent specification.

A.J. submits two pieces of evidence in support of its indefiniteness position: (1) the sworn declaration of Robert E. Griffin;[2] and (2) the expert report of Jon Rau, attached as Exhibit L to its summary judgment motion. Mr. Griffin declares that he "does not understand how it is possible for the tabs and the retainer of the '776 patent to work together to separate or disengage." (A.J. Motion Summ. J., Ex. I, Decl. Robert Griffin, at 2, ¶ 7). Mr. Griffin's declaration relies exclusively on the actual language of the patent. It does not incorporate the Court's construction of the patent terms nor does it make any reference to the patent specification.[3] Similarly, Rau's expert report relies on the express language of the patent. To

---

[2]This was submitted in connection with the Motion for Reconsideration and resubmitted along with the materials in support of A.J.'s Motion for Summary Judgment.

[3]The Court recognizes that the declaration was submitted in support of A.J.'s Motion for Reconsideration of the claim construction opinion. In that context, it was arguably appropriate for the declaration to refer only to the express language of the disputed claim. Although the decision on the Motion for Reconsideration issued simultaneously with this one, the Court instructed the parties to rely on the claim construction order in their dispositive motion briefing. A.J. was free to supplement the evidence it submitted in support of summary judgment.

Rau's credit, he addresses the Court's claim construction when he opines that it "does not solve the above-identified difficulties." (A.J. Motion Summ. J., Ex. L, at 8.) Like Griffin, though, Rau fails to address the patent specification in the portion of his expert opinion relating to indefiniteness.

The specification of the '776 patent explains how the tabs, the retainer, and the wrench disc interact during operation of the preferred embodiment of the invention. The specification reads:

> [I]n operation, the wrench disc 54 is initially placed on the nut of the inner tie rod. Next, the tube 40 is placed over the tie rod, engaged with wrench disc 54, attached thereto by ring 44 and driven via socket 42. The sequence is revised [sic] to remove the tool from the inner tie rod.

(Lisle Opp. to A.J. Mot. Summ. J., Ex. A (the '776 patent), at LIS 000138, col. 4, lines 2–7.) This portion of the specification explains how the retainer, tube, disc, and tie rod can cooperate to rotate the disc and tie rod. It also explains, somewhat obliquely, how the tube and the retainer are detachable from the disc and tie rod. The language that A.J. asserts renders the '776 patent indefinite ("detachably cooperative") seeks to capture both the cooperation process and the detachment process.

Rau urges that the Court does not explain "how or why the retainer and tabs separate while cooperating." (Id.) As the Court explained in its claim construction opinion (and again above), the rotation of the retainer can result in separation and it can result in cooperation. It cannot accomplish both at once. This is why in the Court's original claim construction opinion it held that rotation of the retainer and the tabs can result in "separation or disengagement **or** . . . rotation of the disc and a tie rod that is interlocked with the disc." (A.J. Motion Summ. J., Ex. H,

at 14 (emphasis added)) The Court's claim construction opinion gave meaning to the dual function of the retainer while attempting to remain true to the language, specification and prosecution history of the patent.[4]

The language of the disputed term is admittedly imprecise. Unfortunately, imprecise language in patent claims is not uncommon. See, e.g., All Dental Prodx, LLC v. Advantage Dental Products, 309 F.3d 774, 779 (Fed. Cir. 2002) ("While the contested language is not a model of clarity, it is also fairly simple and intelligible, capable of being understood in the context of the patent specification."). Perhaps in recognition of this reality, the Federal Circuit has declared that "[a] claim is not indefinite merely because its scope is not ascertainable from the face of the claims." Amgen Inc. v. Hoescht Marion Russell, Inc., 314 F.3d 1313, 1342 (Fed. Cir. 2003). "Only after a thorough attempt to understand the meaning of a claim has failed to resolve material ambiguities can one conclude that the claim is invalid for indefiniteness." All Dental Prodx, LLC, 309 F.3d at 780 (Fed. Cir. 2002).

The Court engaged in such a thorough attempt to understand the meaning of a claim. The Court's construction (and reconstruction) of the claim resolves the difficulty that arises from a plain language interpretation of the claim. At the very least, the evidence that A.J. submitted to support its position on indefiniteness is not clear and convincing so as to require a grant of summary judgment on this basis. A.J.'s motion for summary judgment of invalidity based on indefiniteness must be denied.

## C.     A.J.'s challenge based on inoperability and impossibility

---

[4]As acknowledged above, the Court erred when it held that the term referred to "rotation of the retainer *and the tabs.*" The Court recognized its error above and holds that the term "detachably cooperative" refers only to rotation of the retainer.

In addition to asserting that the patent is invalid for indefiniteness, A.J. also asserts that the '776 patent is invalid under 35 U.S.C. § 101 and 35 U.S.C. § 112, ¶1 because it is impossible to meet and/or inoperable. See Process Control Corp. v. Hydreclaim Corp., 190 F.3d 1350, 1359 (Fed. Cir. 1999) ("when 'the claimed subject matter is inoperable, the patent may indeed be invalid for failure to meet the utility requirement of § 101 and the enablement requirement of § 112,' Brooktree Corp.[ v. Advanced Microdevices, Inc., 977 F.2d 1555], 1571 [(Fed. Cir. 1992)] (citing Raytheon Co. [v. Roper Corp.], 724 F.2d [951,] at 956 [(Fed. Cir. 1983)])). Section 101 requires that the subject invention of all patents must be useful. 35 U.S.C. § 101. Section 112, ¶ 1 requires that the patent must enable the invention. 35 U.S.C. § 112, ¶1. As with an invalidity challenge on indefiniteness grounds, the challenger bears the burden of proving by clear and convincing evidence that the patent is impossible to meet and/or inoperable.

A.J. contends that the claim limitation "said retainer being detachably cooperative" is impossible to meet and/or inoperable because the retainer and tabs "simply do not and cannot cooperate to detach." (A.J. Mem. L. Supp. Mot. Summ. J., at 9.) The Court agrees that they do not accomplish cooperation and detachment simultaneously. Rotation of the retainer, however, can accomplish both cooperation and detachment (though again, not simultaneously). The Court recognizes that its erroneous claim construction may have, in part, led A.J. into this argument. Under even the original claim construction, though, the Court clarified that the rotation of the retainer and tabs could lead to detachment or cooperation. In light of the Court's construction (and reconstruction) of the claim, the Court finds that the claim limitation is possible and that it enables an operable invention. A.J.'s position on these issues largely overlaps with its position on indefiniteness, and the motion for summary judgment must similarly be denied.

12

**D. A.J.'s challenge based on invalidity for public use**

A.J. asserts that claims one through five of the '776 patent are invalid based on the public use bar of 35 U.S.C. § 102(b). Section 102(b) provides that an issued patent is invalid when "the invention was . . . in public use . . . in this country more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). As with the other challenges to the validity of the patent, A.J. is required to prove that the patent was in public use by clear and convincing evidence. See Schumer v. Laboratory Computer Systems, Inc., 308 F.3d 1304, 1315 (Fed. Cir. 2003) (applying the clear and convincing evidence standard to a Section 102(b) invalidity claim).

The parties do not dispute that Lisle gave a prototype embodying the accused tool to mechanics in the United States without requiring them to enter into any obligation of confidentiality more than one year before the filing date of the patent. This sets up a prima facie case of public use that could invalidate the '776 patent. As A.J. correctly identifies, "Lisle's only defense to invalidity by public use rests with the experimental use exception." (A.J. Mem. L. Reply Mot. Summ. J., at 7.)

"The experimental use doctrine has long been a fixture of patent law, see, e.g., City of Elizabeth v. Am. Nicholson Pavement Co., 97 U.S. 126 (1877) ('The use of an invention ... by way of experiment, and in order to bring the invention to perfection, has never been regarded as such [barring public] use.')." Minton v. National Ass'n Securities Dealers, Inc., 336 F.3d 1373, 1379 (Fed. Cir. 2003). Lisle asserts that facts relating to the use of the prototype by the mechanics create a genuine issue of material fact that precludes summary judgment. Lisle is correct.

13

The Federal Circuit has held that whether a given use is public use or experimental use is determined by evaluating the totality of the circumstances. See Allied Colloids, Inc. v. American Cyanamid Co., 64 F.3d 1570, 1574 (Fed. Cir. 1995); Netscape Communications Corp. v. Konrad, 295 F.3d 1315, 1320 (Fed. Cir. 2002). Lisle admits that it gave a prototype of the accused tool to fewer than twelve mechanics in the local area surrounding its corporate headquarters. The community in which the mechanics worked was a relatively isolated Iowa town with fewer than 6,000 inhabitants. While there were no written confidentiality agreements in place with the mechanics, Lisle asserts that there was no need for such an agreement in the small Iowa community. While Lisle proceeds through the entire multi-factor test outlined in Judge Linn's concurrence to EZ Dock v. Schaefer Systems, Inc., 276 F.3d 1347, 1357 (Fed. Cir. 2002) (Linn, J., concurring), the Court finds that these three facts alone are sufficient to create a genuine issue of material fact that would preclude summary judgment on invalidity for public use. Consequently, summary judgment on this basis must be denied.

### E. Infringement and related issues

The parties cross-move for summary judgment on the issue of whether A.J.'s tool infringes the '776 patent. Before addressing the infringement issue directly, the Court must first address A.J.'s motion to strike.

### 1. Defendant A.J.'s Motion to Strike

A.J. seeks to strike the portion of an expert report relating to the issue of infringement under the doctrine of equivalence. The asserted grounds for the motion to strike is a failure to comply with the Court's standing order on expert disclosure and discovery. The Court's standing order requires parties to "include a written statement containing a complete statement as

to all expert opinions to be expressed by that witness." A.J. believes that the expert opinion disclosure that Lisle submitted was not a "complete" statement of the expert opinion.

This Motion to Strike has no merit. Lisle's expert opinion disclosure statement identified Marvin Negley, the manager of development and engineering at Lisle, as their expert witness. The disclosure statement further reveals that Negley will testify that the accused tool infringes the claims of the '776 patent "literally and/or under the doctrine of equivalents." Neither the Federal Rules of Civil Procedure nor this Court's standing order on expert discovery require parties to disclose anything more for an expert witness like Mr. Negley who is not specially retained for litigation and whose regular duties do not include provision of expert testimony. The disclosure statement was in compliance with the standing order, so the Motion to Strike is denied.

### 2. Whether the accused tools infringe the '776 patent

The parties have cross-moved for summary judgment on the issue of infringement, with the Plaintiff seeking a judgment of infringement and the Defendant seeking a judgment of non-infringement. Both motions are subject to the same summary judgment standard listed supra at 6.

"An infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then compares the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device." See Johnson Worldwide Assocs, Inc. v. Zebco Corp., 175 F.3d 985, 988 (Fed. Cir. 1999). Although the second step (determination of infringement) is a factual determination, where the parties do not dispute the structure of the accused tools, the question of infringement is amenable to determination on

summary judgment. See Johnson Worldwide Assocs. Inc. v. Zebco Corp., 175 F.3d 985, 988–89 (Fed. Cir. 1999) (citing Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1578 (Fed. Cir.1996)).

### a.    Factual Background

Lisle Corporation is the owner of the '776 patent. The '776 patent discloses an automotive repair tool that is used to remove and replace different styles and sizes of inner tie rods on automobiles. The patented tool includes two separable components – a hollow tube and a c-shaped wrench disc with protruding tabs. The hollow tube is constructed to fit over an inner tie rod. At one end of the hollow tube, there is a socket that allows a ratchet wrench to rotate the tool during operation. At the opposite end of the hollow tube, there is a retainer to engage with a c-shaped wrench disc. The Court will refer to this as the retaining end of the tube. The retaining end of the tube also contains two slots for engaging the tabs of the C-shaped wrench disc. The C-shaped wrench disc engages the nut of a tie rod during installation or removal of the tie rod. The size of the nut on the inner tie rod varies in different types of vehicles. The tool disclosed in the '776 patent permits variously sized c-shaped wrench discs to be used in combination with the same tube to remove the inner tie rod. When the tube is placed over the inner tie rod, a mechanic would place a fitting C-shaped wrench disc over the nut. The slots on the retaining end of the tube permit the tabs of the C-shaped wrench to enter the retainer. The retainer can then be rotated to lock the tabs of the wrench into place. Once the tabs are in the retainer, the mechanic can use a ratchet to turn the tube from the socket end. The turning tube will cause the C-shaped wrench to loosen or tighten the nut on the inner tie rod.

The Defendant manufactures and sells two tools under Model Numbers YA3000 and

YA3000A ("the accused tools") which allegedly infringe the '776 patent. Like the invention claimed in the '776 patent, the accused tools are used to remove or install inner tie rods of varying shapes and sizes. The accused tools consist of two principal components: a hollow tube and C-shaped wrench discs with protruding tabs. A.J. refers to the C-shaped wrenches as "crows feet" in the literature that accompanies the accused tools. The hollow tube has a socket at one end to engage with a ratchet. The opposite end of the hollow tube has two capital T-shaped slots, one on each side of the tube. To use the inner tie rod, the mechanic must place the tube over the inner tie rod and attach a C-shaped wrench disc (or "crows foot") to the nut on the inner tie rod. The C-shaped wrench disc will enter the base of the tube through the vertical portion of the T-shaped slot. After the wrench disc has entered the vertical portion of the T-shaped slot, the tube is rotated to lock the disc into place in the horizontal portion of the T-shaped slot. The mechanic can then rotate the tube with a ratchet attached to the socket end. The turning of the tube will cause the c-shaped wrench ("crows foot") to loosen or tighten the nut on the inner tie rod.

## b.    Literal Infringement

"Literal infringement requires that the accused device contain each limitation of the claim exactly; any deviation from the claim precludes a finding of literal infringement." Litton Sys., Inc., v. Honeywell Inc., 140 F.3d 1449, 1454 (Fed. Cir. 1998). The Court will proceed to compare the accused tools against all the claims and each of their limitations.

### i.    Claim 1 of the '776 patent

Claim 1 is the only independent claim of the '776 patent. It is directed to an inner tie rod removal tool. Here is the text of the claim, with the disputed claim language depicted in bold and underlined:

1. A tool for removal of inner tie rods comprising in combination:
(a) a nut engaging, C-shaped wrench disc having spaced arms for engaging a nut, and outwardly projecting tabs for cooperation with a **retainer**; and
(b) a hollow tube for placement over a tie rod, said tube having a **retainer** at one end and at least two slots for **cooperatively engaging** the tabs of the wrench disc and means for cooperation with tube rotation means at the opposite end, **said retainer being detachably cooperative with the tabs to rotate the disc and a tie rod engaged therewith**.

In its claim construction, this Court construed the disputed claim language in claim 1 as

follows. The term "**retainer**" means "any of various devices used for holding something." The

term "**cooperatively engaging**" means work together to interlock." The phrase "**said retainer**

**being detachably cooperative with the tabs to rotate the disc and a tie rod engaged**

**therewith**" means "rotation of the retainer can result in separation or disengagement or it can

result in rotation of the disc and a tie rod that is interlocked with the disc."

At the most basic level, the accused tools match up with the subject matter of the

invention disclosed by the '776 patent. It is beyond dispute that the accused tools are "tool[s] for

removal of inner tie rods." Claim 1 goes on to recite that the tool would have two major

components. The first component, described in part (a) of Claim 1 of the '776 patent, is a "nut

engaging C-shaped wrench disc having spaced arms for engaging a nut, and outwardly projecting

tabs for cooperation with a retainer." The accused tools utilize a C-shaped wrench disc, which

A.J. refers to in its literature as a "crows foot." The C-shaped wrench disc of the accused tools

has spaced arms for engaging a nut and outwardly projecting tabs. In order to meet all the

limitations of part (a) of Claim 1, these outwardly projecting tabs must also be "for cooperation

with a retainer." Reading this limitation in light of the Court's claim construction, the tabs must

be "for cooperation with a device used for holding something."

The tabs of the C-shaped wrench discs in the accused tools are meant to cooperate with

the retaining end of the accused tools. The retaining end of the accused tools is structured to hold the discs in place. A.J. disputes whether the retaining end of the accused tools should properly be considered the tube or the retainer. The Court will address that contention below in the analysis related to the limitations of part (b) of Claim 1. For now, it suffices to assert that the outwardly projecting tabs on the C-shaped wrench disc of the accused tools are present to hold the discs in place as the discs cooperate with the retaining end of the accused tools. This matches with the final limitation of part (a) of Claim 1.

Part (b) of Claim 1 discloses the other major component of the invention: "a hollow tube for placement over a tie rod, said tube having a **retainer** at one end and at least two slots for **cooperatively engaging** the tabs of the wrench disc and means for cooperation with tube rotation means at the opposite end, said retainer being detachably cooperative with the tabs to rotate the disc and a tie rod engaged therewith." Part (b) of Claim 1 is more conceptually dense than part(a), so it must be parsed a little more closely.

Beginning with the basics, the accused tools meet the first limitation of part (b). They contain "hollow tube[s] for placement over a tie rod." The next limitation is that the tube must have a retainer at one end. A.J. concedes that the accused tools have a retainer at one end. A.J.'s contention is that the T-shaped slots at the retaining end of the accused tools constitute the retainer. In order to match all the limitations of part (b) of Claim 1, the retaining end of the tube must also have "at least two slots." In A.J.'s view, its device defeats literal infringement because the slots in the retaining end of the accused tools would be slots in the retainer not slots in the tube. A.J. misperceives the nature of the invention. The invention contains two primary components: the C-shaped wrench discs and the hollow tube. The hollow tube has a retaining

19

end and a rotating end. At the retaining end, the tube has two claimed features: some structural component that will permit it to hold the C-shaped wrench discs in place, i.e. the retainer, and at least two slots that permit the outwardly projecting tabs on the wrench discs to engage with the retainer. The accused tools combine the slots and the retainer into one structural component: the T-shaped slots. The vertical aspect of the T-shaped slots are the "at least two slots" that the claim limitation requires. The horizontal aspect of the T-shaped slots in the accused tools functions as the retainer, or the device to hold the C-shaped wrench disc in place.

The slots at the end of the tube, the retainer, and the tabs of the wrench disc must "cooperatively engage" or, as construed by the Court, "work together to interlock." These three features of the accused tools meet this limitation. Although it is not in dispute, the Court notes that the accused tools do have "means for cooperation with tube rotation" at the end opposite the retaining end.

The final limitation of part (b) of Claim 1 is "said retainer being detachably cooperative with the tabs to rotate the disc and a tie rod engaged therewith." The Court construed this portion of the claim to mean "rotation of the retainer can result in separation or disengagement or it can result in rotation of the disc and a tie rod engaged therewith." In the accused tools, the retainer has been integrated into the structure of the tube rather than added as a separable component. Consequently, rotation of the tube in the accused tools will *ipso facto* result in rotation of the retainer. With the accused tools, rotation of the tube can result in separation or disengagement from the discs or it can result in rotation of the disc and the tie rod engaged therewith. The accused tools meet this limitation as well.

The accused tools contain each limitation of the '776 patent exactly. Consequently, the

Court holds that the accused tools infringe Claim 1 of the '776 patent. The remaining claims are dependent, but the infringement analysis must be conducted on them as well.

### ii.    Claim 2 of the '776 patent

Claim 2 of the '776 patent incorporates all of the limitations in claim 1 and adds that the "means for cooperation with tube rotation means comprise a socket." In other words, the rotating end of the hollow tube (as opposed to the retaining end) would have a socket as the means to begin rotation. There is no dispute but that A.J.'s accused tools contain a "socket" on the rotating end. Therefore, the Court finds that the accused tools literally infringe claim 2 of the '776 patent.

### iii.    Claim 3 of the '776 patent

Claim 3 of the '776 patent incorporates all of the limitations in claim 1 and adds that the C-shaped wrench disc "include first and second tabs radially projecting outwardly in opposite directions from the center of the disc." The C-shaped wrench disc in the accused tools contains outwardly projecting tabs that extend in opposite directions from the center of the disc. Therefore, the Court finds that the accused tools literally infringe claim 3 of the '776 patent.

### iv.    Claim 4 of the '776 patent

Claim 4 of the '776 patent incorporates all of the limitations in claim 1 and further requires that the "retainer include slots therein for the receipt of the tabs." The Court construed this term to mean "the retainer contains slots for receipt of the tabs on the C-shaped wrench disc." The retainer on A.J.'s accused tool does contain slots for receipt of the tabs on the C-shaped wrench disc. In fact, in the structure of the accused tools, the entire structure of the retainer consists solely of the horizontal slots of the T-shaped slot. A.J. contends that this raises

a claim differentiation problem, as the slots of the retainer must be different from the retainer itself. This Court disagrees. The doctrine of claim differentiation, at its core, dictates that the limitations of a broad claim must not be so defined that they are the equivalent of the limitations of a dependent narrow claim. See U.S. v. Telectronics, Inc., 857 F.2d 778, 784 (Fed. Cir. 1988) (holding that district court cannot construct limitations of a broader claim so that they are the same as the limitations of a narrower claim). Claim 1 of the '776 patent sets forth the invention in its broadest terms. Under the limitations of Claim 1, the retainer can be "any of various devices used for holding something." The limitations of Claim 4 dictate that the retainer must be structured in such a way so that it contains slots for receipt of the tabs of the C-shaped wrench discs. The accused tools have a retainer, as described in the analysis relating to Claim 1. As it happens, the retainer of the accused tools meet the limitations of Claim 4 as well. Therefore, the Court finds that the accused tools literally infringe claim 4 of the '776 patent.

     **v.**     **Claim 5 of the '776 patent**

Claim 5 of the '776 patent incorporates all the limitations in Claim 1and adds that the tools include a plurality of different-sized C-shaped wrench discs to cooperate with different-sized inner tie rods. The parties do not dispute that the accused tools include a variety of different-sized discs to cooperate with different-sized inner tie rods. Therefore, the accused tools meet the limitations of Claim 5. Therefore, the Court finds that the accused tools literally infringe claim 5 of the '776 patent.

## CONCLUSION

For the reasons given in this opinion, the Court denies A.J.'s Motion for Reconsideration of the claim construction opinion based on the asserted ground of indefiniteness. The Court, *sua*

*sponte*, reconsidered its claim construction and enters the following amended construction of the term "said retainer being detachably cooperative with the tabs to rotate the disc and a tie rod engaged therewith" to mean:

> Rotation of the retainer can result in separation or disengagement or it can result in rotation of the disc and a tie rod that is interlocked with the disc.

The Court denies A.J.'s Motion for Summary Judgment of invalidity and non-infringement in its entirety. The Court grants Lisle's Motion for Summary Judgment on infringement in its entirety. Thus, the only issues remaining for trial relate to whether the '776 patent is invalid for the reasons discussed in parts II.B, II.C, and II.D of this opinion.

**Enter:**

David H. Coar
**David H. Coar**
**United States District Judge**

**Dated: October 31, 2003**