# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 7024 | DATE | 04/06/2004 |
| CASE TITLE | Lisle Corporation vs. A.J. Manufacturing Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons given in the attached memorandum opinion: Plaintiff's Motion to Amend Judgment [Doc. #114] is granted; Defendant's Motion to Stay [Doc. # 115] is denied; and Defendant's Objections to the Bill of Costs [Doc. # 126] are overruled. The judgment shall be amended to specify that Defendant A.J. Manufacturing owes Plaintiff: $25,760.48 for sales of the infringing product through January 12, 2004 plus a 3 percent royalty on sales in the period from January 12, 2004 to February 25, 2004; and $5,314.22 in prejudgment interest. Tax Bill of Costs.
(11) ■ [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LISLE CORPORATION, an Iowa corporation ) ) ) | |
| Plaintiff, ) ) | No. 02 C 7024 |
| v. ) ) | HONORABLE DAVID H. COAR |
| A.J. MANUFACTURING COMPANY, an Illinois Corporation ) ) ) ) ) | |
| Defendant. ) | |

DOCKETED
APR - 7 2004

APR 7 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Lisle Corporation ("Plaintiff" or "Lisle") filed suit against Defendant A.J. Manufacturing Company ("Defendant" or "A.J.") alleging that it infringed U.S. Patent No. 5,287,776 (the "'776 patent") by manufacturing and selling a specialized automotive inner tie rod tool. Following a jury trial, the jury returned a verdict in favor of the Plaintiff on February 12, 2004. The jury determined that the '776 patent was valid and that Defendant owed Plaintiff a 3 percent royalty on sales. This Court entered judgment of a 3 percent royalty, but it did not specify in the judgment the dollar amount that Defendant owed Plaintiff for sales. On February 25, 2004, the Court enjoined Defendant from producing or selling infringing tools for the life of the patent.

There are three issues presently before the Court: (1) Plaintiff's Motion to Amend the Judgment; (2) Defendant's Objections to Plaintiff's Bill of Costs; and (3) Defendant's Motion to Stay the Injunction pending appeal. The Court addresses these motions in the foregoing opinion.

131

I. **PLAINTIFF'S MOTION TO AMEND JUDGMENT**

Plaintiff seeks to amend the judgment to include a specific accounting of damages, prejudgment interest, and costs. As respects the issue of costs, the judgment need not be amended for Plaintiff to recover its costs. Plaintiff's Bill of Costs will be addressed below along with Defendant's Objections to the Bill of Costs. The other two issues addressed in Plaintiff's Motion, specific accounting of damages and prejudgment interest, will be resolved below.

A. **Specific Accounting of Damages**

According to the jury's verdict, Lisle is entitled to a reasonable royalty of 3 percent on sales of the infringing tools through the date of the injunction. The parties agree that the royalty amount from the Defendant's sales through January 12, 2004 is $25,760.48. Defendant's sales numbers from January 12, 2004 through the date of the injunction (February 25, 2004) are as yet undetermined. Consequently, the Plaintiff seeks an amended judgment that orders Defendant A.J. to pay damages in the amount of $25,760.48 for sales through January 12, 2004 plus a 3 percent royalty on sales in the period from January 12, 2004 to February 25, 2004.

The Court assumes that the reason Plaintiff seeks to amend the judgment to include the specific accounting of damages is to diminish uncertainty in the amount of the royalty.[1] While the amended judgment Plaintiff requests would not eliminate uncertainty, it limits the uncertainty to approximately six weeks of sales. The Court can perceive no mischief in granting this request. The judgment will be amended to include a damage amount of $25,760.48 plus a 3 percent royalty on sales in the period from January 12, 2004 to February 25, 2004.

---

[1] Plaintiff would be well-advised to specify the underlying reasons for its motions in the future.

2

## B.  Prejudgment Interest

Plaintiff's Motion also requests that the Court amend the judgment to include an award of prejudgment interest. In patent cases, the Supreme Court has declared that "prejudgment interest should ordinarily be awarded." General Motors Corp. v. Devex Corp., 461 U.S. 648, 655 (1983); see also Shott v. Rush-Presbyterian St. Luke's Medical Center, 338 F.3d 736, 745 (7th Cir. 2003) ("in most cases prejudgment interest is an element of full compensation"). Defendant opposes the award of prejudgment interest in this case based on the Plaintiff's six-year delay in filing this action to protect its patent. The Supreme Court's decision in General Motors offers some support for denying prejudgment interest based on unnecessary delays. See General Motors, 461 U.S. at 657 ("it may be appropriate to limit [or deny] prejudgment interest . . . where the patent owner has been responsible for undue delay in prosecuting the lawsuit"). In the years since General Motors, however, the Federal Circuit has adhered to the rule that delays by the patentee do not justify denying prejudgment interest "absent prejudice to the Defendants." Lummus Indus., Inc. v. D.M. & E. Corp., 862 F.2d 267, 275 (Fed. Cir. 1988) cited in Crystal Semiconductor Corp. v. Tritech Microelectronics, Int'l., Inc., 246 F.3d 1336, 1361–62 (Fed. Cir. 2001). Other than the amount of the interest that accrued with the passage of time, the Defendant has not alerted the Court of any prejudice it has suffered. Consequently, the Court finds that an award of prejudgment interest is justified in this case.

## C.  Calculating the Amount of Prejudgment interest

Plaintiffs seek prejudgment interest in the amount of $5,314.22. Plaintiff arrived at this amount by applying the applicable prime rate from the year to its royalty of the annual sales and compounding the interest annually. Defendants object to this calculation and urge that Plaintiff

3

be awarded prejudgment interest in the amount of $878.07. Defendant A.J. asserts that this amount represents simple interest, but it does not provide a source for the interest rate it applied to reach this amount. A simple arithmetic calculation (interest amount/principle = interest rate) reveals a rate of 3.4 percent, but the Defendants do not offer a source for this interest rate.

"The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court." Bio-Rad Laboratories, Inc. v. Nicolet Instrumental Corp., 807 F.2d 964, 969 (Fed. Cir. 1986). As a general matter, the Court finds that prejudgment interest should be compounded. During the period of infringement, the Defendant retained the royalties that should have been paid to Plaintiff. Compound interest more accurately accounts for the Defendant's increased financial obligation to Plaintiff over time and it comes closer to fully compensating Plaintiff for the infringement of its patent.

Defendant's only argument against compounding the interest is that it results in an interest amount that is nearly 20 percent of the total judgment amount. This argument yields no principle of general application and, if accepted, it would impose a de facto limit on prejudgment interest awards that is inconsistent with the case law. See, e.g., In re Oil Spill by the Amoco Cadiz off the Coast of France on Mar. 16, 1978, 954 F.2d 1259, 1335 (7th Cir. 1992) (awarding $65 million in damages and $148 million in prejudgment interest). The Court rejects Defendants argument and will compound the interest in this case.

This leaves only the question of what interest rate should apply. The Seventh Circuit provides support for Plaintiff's suggestion of applying the prime rate. See Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir. 1989). The Seventh

4

Circuit announced:

> [W]e suggest that district judges use the prime rate for fixing prejudgment interest where there is no statutory interest rate. That is a readily ascertainable figure which provides a reasonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default.

Id. Consequently, the Court will apply the prime rate that was in effect at the time the royalties accrued.

Plaintiff's calculations of the prejudgment interest, a summary of which is attached to its Motion as Exhibit F, are accurate. The Court will amend the judgment to award Plaintiff $5,314.22 in prejudgment interest.

## II. PLAINTIFF'S BILL OF COSTS

Plaintiff timely filed its Bill of Costs on March 15, 2004 seeking recovery of $12,004.69 in costs associated with this action. Plaintiff seeks recovery of the filing fee ($150.00), the fee for service of process ($102.00), the court reporter's fees for producing transcripts ($1,956.90), witness fees ($258.09), photocopying costs ($3606.20), and other costs ($5,931.50). Defendant objects to Plaintiff taxing the court reporter's fees and the portion of the photocopying costs related to color photo-copies ($847.30).

Rule 54(d) of the Federal Rules of Civil Procedure permits the prevailing party to tax its costs as a matter of course. Costs for the fees specified in 28 U.S.C. § 1920 are presumptively awarded to the prevailing party. See FASA Corp. v. Playmates Toys, Inc., 108 F.3d 140, 144 (7th Cir.1997). Should the losing party seek to challenge taxation of those fees enumerated in Section 1920, it must affirmatively demonstrate that those fees were not necessary to the litigation. Both of the items that Defendant objects to in Plaintiff's Bill of Costs are specifically

5

allowed for in 28 U.S.C. § 1920. See 28 U.S.C. § 1920(2) (allowing recovery of transcript costs); id. 1920(4) (allowing recovery of copying costs).

In order to resolve both of Defendant's objections to Plaintiff's Bill of Costs, then, it becomes necessary for the Court to answer whether the transcripts and/or the color photocopies were "necessarily obtained for use in the case." In the affidavit attached to the Bill of Costs, Plaintiff asserts that the court transcripts were necessary "to prepare and respond to pre- and post-trial motions." (Pl. Aff. Support Bill Costs, ¶7) Defendant responds that Plaintiff "did not utilize the transcript at any time during the district court action" and Plaintiff "did not request daily transcripts during trial or use transcripts in post-trial motions." (Def. Objections Bill Costs, at 1). Plaintiff has filed a response in which it asserts that it used the transcripts to: prepare for the January 29, 2004 evidentiary hearing and to prepare for trial; prepare for examination of Joe Chrzanowski; and prepare Lisle's Opposition to A.J.'s Motion to stay the injunction.

Transcripts need not be submitted to the court in order for them to be necessarily obtained for use in the case. Plaintiff's assertion that the transcripts were used in connection with the above listed tasks is sufficient to justify an award of costs for the transcripts. As noted above, costs that are specified in Section 1920 are presumptively awarded to the prevailing party. Defendant's blank assertions that Plaintiff did not need or use the transcripts do not defeat the presumption. Defendant's objection to the costs of the transcript is overruled.

Plaintiff's taxation of photocopies included 458 color photocopies it made to prepare for depositions and trial exhibits. As with the objection to the transcript fees, the Defendant asserts that Plaintiffs color photocopies were not necessarily obtained for use in this case because they were not attached to its briefs or submitted as exhibits at trial. These facts, while they may be

6

true, do not support Defendant's assertion that Plaintiff "did not rely on color copies at any time during this litigation." (Def. Obj. Bill Costs at 1) Plaintiff's use of color photocopies is reasonable in this patent case and Defendant's objection is overruled.

The Court will tax $12,004.69 in costs against Defendant A.J. Manufacturing Company.

## III. DEFENDANT'S MOTION TO STAY INJUNCTION PENDING APPEAL

On February 25, 2004, this Court entered a permanent injunction against Defendant A.J. Manufacturing Company that prohibits it from making, using, selling, offering for sale, or importing infringing tools for the life of the patent. The same day, A.J. filed its Motion to Stay the injunction pending the appeal.

In 1987, the Supreme Court set forth the four factors a court should weigh in considering a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987). In the context of injunctions against patent infringers, the Federal Circuit has cautioned that the result should come from a weighing of all four elements. "The magnitude of the threatened injury to the patent owner is weighed, in light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error.... No one element controls the result." H.H. Robertson, Co. v. United Steel Deck, Inc., 820 F.2d 384, 390 (Fed. Cir. 1987). Where a patent has been found to be infringed, however, the presumption is in favor of sustaining the injunction. See Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1247 (Fed. Cir. 1990).

7

### A. Likelihood of Success on the Merits of the Appeal

The district court engages in a peculiar calculus when it attempts to discern a party's likelihood of success on the merits of an appeal. While this Court is confident in the decisions that it has made during the course of this litigation, it nevertheless recognizes that the Federal Circuit employs a de novo standard of review on some of the legal issues that will be presented in the appeal. As the Defendant notes in its motion, the Court arrived at its construction of the claims of the patent in suit with some difficulty. Lisle Corp. v. A.J. Mfg. Co., No. 02 C 7024, Order of Oct. 31, 2003, at 9 (slip op.). Claim construction is one of the areas of the law where the Federal Circuit employs a de novo standard of review. See Microsoft Corp. v. Multi-Tech Systems, Inc., 357 F.3d 1340, 1345–46 (Fed. Cir. 2004). If the Federal Circuit reaches a different conclusion on how the claims of the patent in suit should be constructed, the resulting determination of infringement would be in doubt. Given the professed difficulties that this Court had in arriving at its claim construction, the Defendants have a fair likelihood of success on the merits of an appeal of the claim construction ruling.

This Court does not find that the Defendants have much likelihood of success on the merits of an appeal based on the public use issue, however. In order to prevail on that issue, the Defendants would have to persuade the Federal Circuit that there was insufficient evidence in the record to support the jury's conclusion that the alleged public use was experimental and therefore not a disqualifying public use. See Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728, 736–37 (Fed. Cir. 2002). While this is a difficult standard to meet for any issue, it is particularly difficult where, as here, the Defendant was required to establish the prior public use by clear and convincing evidence. See id. at 738. Given the high burden of proof and the difficult standard of

review on appeal, the Court finds that the Defendant is unlikely to prevail on the appeal of the experimental use issue.

## B.    Irreparable Harm to the Defendant from the Injunction

Defendant asserts that this injunction will irreparably harm its relationship with Snap-On Tools, one of its biggest clients. Defendant does not spell out the nature of this irreparable damage. Instead, it relies on the assertion that it will "lose face if it is not permitted to continue selling one of the tools in its line." (Def. Motion Stay, at 2) This speculative loss of goodwill is insufficient to establish irreparable harm that would support staying the injunction. Even if an injunction were to destroy the business entirely, the injunction should nonetheless issue. See Windsurfing Intern., Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."). The Federal Circuit acknowledged that this harsh rule cannot be applied mechanically, however, and where a party puts forth credible evidence of serious, irreparable harm, a stay pending appeal remains appropriate. See Standard Havens Products, Inc. v. Gencor Indus., Inc., 897 F.2d 511, 515 (Fed. Cir. 1990). In Standard Havens, the Federal Circuit reversed the denial of a stay where the request was supported by affidavits from corporate officers indicating that the injunction would result in "employee layoffs, immediate insolvency, and, possibly, extinction." Id. In this case, the Defendant's own motion merely asserts a loss of goodwill and (in its reply brief, which is too late to present a new argument) the specter of lost business with one customer. These asserted harms (which are not clearly supported by any evidence) are insufficient to support a stay of the injunction.

## C. Harm of a Stay to Other Parties

In patent litigation, a patent holder benefits from a presumption of irreparable harm prior to trial if it makes a "clear showing that the asserted patent is . . . []valid and that it is infringed." Novo Nordisk of North America, Inc. v. Genentech, Inc., 77 F.3d 1364, 1367 (Fed. Cir. 1996) (discussing preliminary injunctions in patent cases). Here, Plaintiff has obtained an enforceable (but appealable) judgment that their patent is valid and that the Defendant infringed it, so the presumption is clearly in favor of harm to the Plaintiff. Additionally, Plaintiff presented testimony at trial that it is its practice *not* to license its patented products to any third party. Permitting the Defendant to continue to produce the infringing product pending appeal seriously erodes the Plaintiff's ability to exclude others from utilizing the invention disclosed by its patent.

Plaintiff also asserts that staying the injunction would further harm the interests of one of the inventors, Gerald McKim. Mr. McKim is entitled to a five percent royalty on all sales of Plaintiff's products covered by the patent, but he is arguably not entitled to any royalty from Defendant's sales of products covered by the patent. While the harm to Mr. McKim is not as compelling as the harm to the Plaintiff patent holder in this case, it is nonetheless an injury that would flow from staying the injunction.

## D. Public Interest Considerations

Defendant asserts that the public interest in encouraging future innovation and competition favors the grant of a stay in this case. Specifically, Defendant asserts that "refusing a stay may discourage future innovators from legitimate efforts to design around issued patents." (Def. Motion Stay, at 3) While the public interest in promoting invention is strong, the public interest in the enforcement of valid patents is stronger. As Plaintiff points out, Defendant's

10

position "muddles the distinction between encouraging innovation by promoting new, non-infringing design arounds and discouraging infringing products or failed attempts to design around." (Pl. Opp. Motion Stay, at 6–7) (emphasis omitted).[2] The public interest favors denying the stay.

### E. Weighing the Equities of the Stay

As outlined above, the only factor favoring a stay pending appeal is the Defendant's fair likelihood of success on the appeal of the claim construction issue. The harm to the Plaintiff's ability to exclude others from using its invention is greater than the alleged irreparable harm Defendant will suffer from the injunction. In the face of a jury determination that the patent is valid and this Court's determination that the patent was infringed, the Court concludes the equities of this case favor denying the stay.

---

[2]Defendant's only other public interest argument in support of a stay is that it would damage the distributor (Snap-On Tools) to whom Defendant sells the infringing tool. This argument was presented for the first time in a Defendant's reply brief, which is too late for presentation of new arguments. Moreover, this argument is not properly considered as part of the public interest analysis; it should be addressed to the third factor in the stay analysis: the harm to other parties interested in the litigation. Since it arrives too late, the Court will not consider it in either place.

## CONCLUSION

For the reasons given in this opinion, Plaintiff's Motion to Amend the Judgment is granted; Defendant's Objections to Plaintiff's Bill of Costs are overruled; and Defendant's Motion to Stay the Injunction Pending Appeal is denied.

**Enter:**

_____
**David H. Coar**
**United States District Judge**

Dated: April 6, 2004